Harold R. NEWSOM, Appellant,

v.

B.B., B.C. as Next Friend of C.C., D.E. as Next Friend of E.E., and F.G. as Next Friend of G.G., Appellees.

No. 09–08–00480–CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 29, 2009.

Decided Feb. 18, 2010.

Scott Rothenberg, Law Office of Rothenberg, Houston, for Appellant.

Diana L. Faust, John Wesley Raley, Cooper & Scully, P.C., Dallas, Richard T. Howell, Jr., Buckley, White, Castaneda & Howell, L.L.P., Houston, for Appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Appellees B.B., C.C., E.E., and G.G., obtained a judgment against Harold R. Newsom for negligence and negligence *per se* based upon Newsom's failure to warn or protect appellees from acts of sexual assault by Newsom's adult son, Jason.[1] In nine issues, Newsom contends Texas law recognizes no legal duty on the part of a father to warn third parties about the sexual and assaultive history of his adult son, challenges both the availability of a civil remedy for endangering a child and the sufficiency of the evidence supporting the jury's finding on negligence *per se*, attacks the amount of damages awarded for future mental anguish, and argues that the trial court erred by failing to disregard damage findings. We reverse that part of the judgment that awards each appellee a judgment against Harold R. Newsom in the amount of $400,000 plus $150,000 in prejudgment interest, and render judgment that appellees take nothing from Ha-

---

1. Due to the minority of the injured parties, B.C. acted as next friend of C.C., D.E. acted as next friend of E.E., and F.G. acted as next friend of G.G. For convenience, we refer to each minor through assigned initials rather than to the party appearing on his behalf.

rold R. Newsom on their claims for negligence and negligence *per se*. We affirm the remainder of the judgment, including an award of $2,000,000 plus $750,000 in prejudgment interest to each appellee against Jason Newsom and an award of $181,000 to appellees for fraudulent transfer to avoid creditors, and a take nothing judgment against Cougar Run Ranch I, Inc., Cougar Run Ranch II, Inc., and Hal Newsom's Airboat Tours, Inc.

The jury found that Harold Newsom's negligence was a proximate cause of the "occurrence in question" with respect to the four plaintiffs, all of whom were adolescent or pre-adolescent boys that Jason Newsom had sexually abused. The jury also found that the negligence *per se* of Harold Newsom was a proximate cause of the occurrence in question with respect to the four plaintiffs, the statutory violation at issue being the penal offense of endangering a child. *See* TEX. PEN.CODE ANN. § 22.041(c) (Vernon Supp. 2008). The jury failed to find that the Newsoms engaged in either a joint enterprise or a joint venture and did not reach the contingently-submitted questions regarding Jason's agency and the plaintiff's status regarding a joint venture. The jury did find that Jason Newsom committed an assault against and intentionally inflicted severe emotional distress on each plaintiff. The jury apportioned responsibility 80% against Jason Newsom and 20% against Harold Newsom. The jury also found that there had been a fraudulent transfer of property by Jason Newsom. The trial court entered judgment on the jury's verdict.

■ Harold Newsom ("Newsom") contends he owed no legal duty to the appellees. Duty is a threshold issue and "liability cannot be imposed if no duty exists." *The Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex.2006). The existence of a duty is a question of law for the court.

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). "As a general rule, a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). "In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Phillips*, 801 S.W.2d at 525.

■ The Supreme Court has recognized limited exceptions to the general rule of non-liability. *Nabors Drilling, U.S.A. v. Escoto*, 288 S.W.3d 401, 405 (Tex.2009). For instance, a person who controls a premises has a duty to protect an invitee from criminal acts of third persons if the premises owner knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex.2008). To be held liable, the person in control of the premises must have done more than create an opportunity for another to commit a crime, unless at the time of his negligent conduct he knew or should have known that he created the situation and that a third person might avail himself of the opportunity to commit a crime. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex.1985) (negligence *per se* arising from violation of a city ordinance).

■ Additionally, the existence of a special relationship may impose a duty upon a person to control a third party's conduct. For instance, a defendant in control of a dangerous person may owe a duty of care to persons foreseeably exposed to danger arising from the defendant's failure

to reasonably exercise its right of control. *See Texas Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 38–39 (Tex.2002). The scope of the duty is commensurate with the right of control. *See id.; see also Lefmark Mgmt. Co. v. Old,* 946 S.W.2d 52, 53–54 (Tex. 1997).

Circumstances in which Texas law recognizes a duty in the absence of control or a right of control are even more limited. A person not in control of real premises may owe a duty if that person either created a dangerous condition or agreed to make safe a known dangerous condition. *Lefmark Mgmt. Co.,* 946 S.W.2d at 54. Generally, if a party enters into an affirmative course of action, he has assumed the duty to act and must do so with reasonable care. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309–10 (Tex.1983) ("One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care."). However, "[u]nder Texas law, in the absence of a relationship between the parties giving rise to the right of control, one person is under no legal duty to control the conduct of another, even if there exists the practical ability to do so." *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993).

At the time of the assaults on the appellees, Jason Newsom was an adult. Texas courts do not generally impose liability on a parent for the actions of an adult child. *See Villacana v. Campbell,* 929 S.W.2d 69, 75 (Tex.App.-Corpus Christi 1996, writ denied). Harold Newsom and his son operated neighboring wildlife ranches and both men conducted bowfishing expeditions on air boats. The jury failed to find that Jason Newsom and Harold Newsom were engaged in either a joint enterprise or a joint venture. The appellate record does not show that appellees challenged those findings in the trial court and those findings have not been challenged on appeal. *See* Tex.R. Civ. P. 324; Tex.R.App. P. 25.1(c); 33.1(a); 38.2(b)(1).

Appellees identify evidence that they argue supports imposing a duty on Harold Newsom. First, they rely on evidence of Newsom's knowledge that, approximately twenty years earlier, then-seventeen-year old Jason Newsom had sexually assaulted his step-brothers. In the course of divorce proceedings in 2002, Jason Newsom's spouse accused him of abusing her children and nephew. Although the agreed final decree provided Jason with unsupervised visitation with the children, Newsom was present during the proceedings and was aware that allegations of sexual misconduct by Jason Newsom had been raised. In December 2004, an employee of Jason Newsom's animal control business told Harold Newsom of his concerns about the young boys spending time on Jason's property. Appellees contend this evidence of Harold Newsom's superior knowledge of Jason Newsom's sexual proclivities justifies imposing a duty on Newsom to ensure that the appellees were not placed in harm's way, notwithstanding Harold Newsom's admitted lack of control over Jason Newsom.

Appellees rely upon *Golden Spread Council, Inc. # 562 of the Boy Scouts of Am. & Boy Scouts of America v. Akins,* as authority for imposing a duty under the circumstances present in this case. *See Golden Spread Council, Inc. # 562 of the Boy Scouts of Am. v. Akins,* 926 S.W.2d 287, 289–90 (Tex.1996). In *Akins,* a parent sued both the national scouting organization (BSA) and the local scouting organization (GSC) for damages suffered by a minor who had been molested by a volunteer scoutmaster. *Id.* at 288–89. The Supreme Court held the local organization had a duty but the national organization

did not. *Id.* at 289. The minor's allegations had been reported to the local organization before it recommended the scoutmaster to a church that was forming the new troop. *Id.* at 289. In balancing the social utility of GSC's conduct, the magnitude of the burden on GSC, and the consequences of placing a burden on GSC, the Supreme Court noted that GSC was not obliged to investigate the scoutmaster or risk liability for defamation, as all it had to do was to refrain from recommending him. *Id.* at 291. In considering GSC's superior knowledge and its right of control, the Supreme Court noted that although GSC did not control the everyday functions of its chartered organizations and scoutmasters, it had affirmatively acted to recommend the scoutmaster. *Id.* The court held that if GSC knew or should have known the scoutmaster was likely to molest young boys, it had a duty not to recommend him as a scoutmaster. *Id.* at 292. The court stated "GSC's only duty was to exercise reasonable care, based on the information it received, in recommending scoutmasters." *Id.* In considering whether to impose a duty on the national organization, the Supreme Court noted that it would be a tremendous burden to place a duty on BSA to screen adult volunteers about whom it has no knowledge and over whom it had little or no control. *Id.* at 290. BSA could not be held responsible for GSC's conduct because GSC was a separate legal entity over which BSA had no direct control. *Id.*

The two defendants differed in that only the local organization took the affirmative action of recommending a scoutmaster that it should have known posed an increased risk of harm to the scouts. *See id.* at 291. The Supreme Court expressly limited the duty imposed to the action taken by GSC. *Id.* at 292. The duty imposed on the local organization concerned a matter over which it had control, namely, its recom-

mendation of the scoutmaster. The evidence indicated that, without the recommendation of GSC, the child molester would not have become the troop's scoutmaster. *See id.; see also Otis Eng'g,* 668 S.W.2d at 309.

Another case relied upon by the appellees concerned a grandmother sued for negligence after the grandfather molested a child. *See Doe v. Franklin,* 930 S.W.2d 921, 922–23 (Tex.App.-El Paso 1996, no writ). In that case, however, the grandmother had undertaken the care and supervision of the child. *Id.* at 928–29. Once she did so, the grandmother assumed the duty to not leave the child alone with a person she knew or should have known had previously molested the child. *Id.* at 929. Thus, the duty arose from an affirmative act of the defendant, that is, leaving the child alone with the grandfather after having assumed caretaking responsibilities for the child. *Id.* In contrast, Newsom did not engage in an affirmative act that created the unreasonable risk of harm to the appellees. Furthermore, the appellees concede that Harold Newsom had no control over Jason Newsom. The appellees seek to impose liability on Newsom because Newsom possessed superior knowledge of the risk and likelihood of injury to the boys that Jason Newsom befriended. According to appellees, Newsom's fine reputation in the community made it easier for Jason Newsom to befriend the children and gain the trust of their parents.

█ The appellees argue that the social utility of Newsom's wildlife recreation business might be high, but allowing boys to participate in the business activities Jason Newsom jointly conducted with Newsom has no social utility. Appellees also argue that Newsom "reaped the benefits" of combining his business with Jason Newsom. Notwithstanding such evidence, the

**916**

jury failed to find that Harold Newsom and Jason Newsom engaged in either a joint venture or a joint enterprise. Those findings were not challenged in the trial court and have not been challenged on appeal. Accordingly, appellees cannot rely upon jointly conducted business activities to impose liability on Harold Newsom for Jason Newsom's conduct and must instead show that Newsom engaged in an affirmative act that worsened the situation. *See, e.g., Golden Spread,* 926 S.W.2d at 292 (recommending scoutmaster); *Otis Eng'g,* 668 S.W.2d at 308–10 (sending intoxicated employee home in his vehicle). The evidence relied upon by appellees shows only that Harold Newsom derived some benefit from Jason Newsom's business activities; it does not show that Newsom increased the risk to the boys through some affirmative act. Appellees argue that Newsom contributed to a "Neverland" environment in which Jason Newsom could take advantage of the boys, but Jason Newsom operated his own businesses, owned his own ranch, and operated his own boat. Harold Newsom also owned a ranch and a boat, but his activities did not increase the risk to the children.

 According to appellees, only a slight burden is placed on Harold Newsom to warn appellees and their parents of Jason Newsom's proclivities. Appellees provide no authority for creating a duty to warn that is separate and apart from a general duty to exercise reasonable care to protect others from harm. Generally, a person's duty to warn of a dangerous situation that the person did not create is a moral duty, not a legal one. *See Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109, 110 (Tex.1942). The Supreme Court stated:

> a bystander may watch a blind man or a child walk over a precipice, and yet he is not required to give warning. He may

stand on the bank of a stream and see a man drowning, and although he holds in his hand a rope that could be used to rescue the man, yet he is not required to give assistance. He may owe a moral duty to warn the blind man or to assist the drowning man, but being a mere bystander, and in nowise responsible for the dangerous situation, he owes no legal duty to render assistance.

*Id.*

 Superior knowledge of an unreasonable risk of harm presented by a third party may justify imposing a duty commensurate with the defendant's control. *See, e.g., Texas Home Mgmt.,* 89 S.W.3d at 38–39 (duty to exercise reasonable care in exercising control over dangerous person housed in defendant's facility). But foreseeability alone is not sufficient to create a duty. *Nabors Drilling,* 288 S.W.3d at 411. In this case, Newsom had no right to control the behavior of his adult son, and the appellees have not identified an affirmative act by Newsom that created an unreasonable and foreseeable risk of harm to the appellees. Because liability for a criminal act committed by a third party cannot be based upon foreseeability alone, in the absence of control or a right of control, we hold that Harold Newsom owed no duty to prevent injuries to the appellees resulting from sexual assaults committed by Newsom's adult child. We sustain issues one and two.

In issues three and four, Newsom relies on the Supreme Court decision in *Perry v. S.N.,* 973 S.W.2d 301, 308–09 (Tex.1998) in arguing that the criminal statute, Section 22.041(c), does not provide an appropriate basis for civil liability. In *Perry,* the Court held a claim of negligence per se could not be "based on defendants' violation of the child abuse reporting statute." *Perry,* 973 S.W.2d at 309. The Court explained in part:

Some commentators contend that the term 'negligence per se' does not even apply when the statute on which civil liability is based corresponds to no common law duty. While our definition has never been so restrictive, this Court in fact has created a new duty by applying negligence per se on only one occasion.... Thus, based on both this Court's past practice and the observations of noted scholars, we conclude that the absence of a relevant common law duty should be considered in deciding whether to apply negligence per se to the Family Code's reporting provision. (citations omitted).

We need not decide in this case, however, whether to apply negligence *per se* to the statute here, if the evidence does not establish a violation of the statute.

Issues three through six challenge the judgment based upon the jury's affirmative finding of negligence *per se* by Harold Newsom. We therefore address Newsom's legal sufficiency issues first. *See* Tex.R.App. P. 43.3.

▆▆▆▆ In reviewing the legal sufficiency of the evidence, the test is whether the evidence "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* In addition, we must "consider [the] evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. But if the evidence allows of only one inference, neither jurors nor the reviewing court may disregard it." *Id.* at 822 (footnotes omitted).

The jury was instructed, as follows:

You are instructed that, in order to answer this question "yes" with respect to a Plaintiff named below, you must find that Harold R. Newsom committed a criminally negligent act or omission that placed the Plaintiff in imminent danger of death, bodily injury, or physical or mental impairment, and that Harold R. Newsom's act or omission occurred at a time when the Plaintiff was 14 years of age or younger. For purposes of this paragraph, you are further instructed as follows:

a. "Bodily injury" means physical pain, illness, or any impairment of physical condition.

b. A person acts with "criminal negligence," with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

c. "Omission" means failure to act[.]

In issues five and six, Newsom contends the evidence is legally insufficient to support the jury's finding that he committed a criminally negligent act or omission that placed each appellee in imminent danger of bodily injury. A person commits an offense if, with criminal negligence, by act or omission, he engages in conduct that places a child younger than fifteen years in imminent danger of bodily injury. *See* Tex. Pen.Code Ann. § 22.041(c). Newsom contends there is no evidence that any of the appellees were in imminent danger at the time Newsom acted or failed to act.

■ Appellees argue that the evidence that Jason Newsom committed acts of sexual assault between September 2005 and February 2006, at a time when Newsom was aware of prior allegations of sexual assault and after he admitted his concern to Jason Newsom's employee, established that appellees were in imminent danger of sexual assault by Jason Newsom. Appellees also argue that Texas law does not require that the actual sexual abuse have occurred while Harold Newsom was present and that it is sufficient that they were left unsupervised with Jason Newsom. There is no evidence in the record that Harold Newsom ever assumed any supervisory responsibility for any of the appellees. Furthermore, there is no evidence that Newsom was present at any time when Newsom knew or should have known that an assault would occur.

Examples where a danger has been found to be imminent within the criminal proscription for endangering a child include striking the child's mother while she is holding the child, driving while intoxicated with children in the vehicle, evading arrest and driving dangerously with children in the vehicle, and failing to provide adequate nourishment to a child in the defendant's care. *See Garcia v. State,* 212 S.W.3d 877, 886 (Tex.App.-Austin 2006, no pet.) (striking person holding child); *Rodriguez v. State,* 137 S.W.3d 758, 761 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (driving while intoxicated with children in vehicle); *Walker v. State,* 95 S.W.3d 516, 521 (Tex.App.-Fort Worth 2002, pet. ref'd) (evading arrest and violating traffic laws with child in vehicle); *Contreras v. State,* 54 S.W.3d 898, 905 (Tex.App.-Corpus Christi 2001, no pet.) (failing to provide adequate nourishment to child). On the other hand, leaving a three-year-old child alone in a truck while the defendant ingested methamphetamine in a restroom did not expose the child to imminent danger in a situation where the child was upset but no harm came to him. *Millslagle v. State,* 81 S.W.3d 895, 898 (Tex.App.-Austin 2002, pet. ref'd). The court held the "temporal aspect of the crime" was lacking. *Id.* In another case, living with a man who was on probation for indecency with a child, without more, did not place the child in imminent danger under Section 22.041(c), although the child was eventually sexually assaulted by the probationer. *Elder v. State,* 993 S.W.2d 229, 229–30 (Tex.App.-San Antonio 1999, no pet.). In a robbery case, the Court of Criminal Appeals held that threats by the defendant "that she had almost had him killed the day before, but she had 'cancelled' the plan when he agreed to show up with the money" did not establish a threat of bodily injury to be inflicted immediately, as required to establish that the victim was placed in fear of imminent bodily injury. *Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim.App.1989). From these cases, we discern that to be "imminent" for purposes of imposing responsibility pursuant to Penal Code § 22.041(c), the situation must be immediate and actual, not potential or future, at the moment of the act or omission by the defendant. None of the evidence that the appellees contend supports the jury's finding concerns an occurrence in which Harold Newsom should have been aware that an assault was imminent. Penal Code § 22.041 requires that defendant have engaged in conduct, either by act or omission. *See* TEX. PEN.CODE ANN. 22.041. Under the express terms of the criminal statute, to engage in criminal conduct that by act or omission places a child in imminent danger of bodily injury, the danger must be imminent at the moment the defendant engages in the conduct. Even if § 22.041 establishes a standard of conduct that applies to civil cases, a matter we expressly do not reach, the evidence in this

record does not establish that Harold Newsom violated the criminal statute. We sustain issues five and six.

The remaining issues would not entitle Newsom to greater relief. Because the remaining issues and arguments are not necessary to the final disposition of the appeal, we decline to address them. *See* TEX.R.APP. P. 47.1.

We reverse that part of the judgment that awards B.B., C.C., E.E., and G.G. each $400,000 in damages plus $150,000 in prejudgment interest, and render judgment that B.B., C.C., E.E., and G.G. take nothing from Harold R. Newsom on their claims for negligence and negligence *per se*. We affirm the remainder of the judgment.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.