# NO. 12-12-00287-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *VANESSA LYNN CLARK,* *APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury found Appellant, Vanessa Lynn Clark, guilty of the offense of endangering a child. Appellant pleaded true to the enhancement allegation in the indictment. The trial court assessed her punishment at confinement for 119 months and a fine of $2,500.00. In her first issue, Appellant contends the evidence is insufficient to sustain her conviction for endangering her son, Tristan. In her second issue, Appellant contends the trial court erred in admitting evidence of the previous death of her son Christian. We reverse the judgment of the trial court and render a judgment of acquittal.

## BACKGROUND

Appellant put her four month old son, Tristan, in bed with her at 11:30 p.m. and set her bedside alarm clock for 4:30 a.m. When she awoke at 4:30 a.m. to check on Tristan, he was not breathing. She called 9-1-1 while her husband performed CPR on Tristan. Nathan Smith, a paramedic from the Lufkin Fire Department, arrived at Appellant's home at about 4:40 a.m. where he saw Appellant's husband administer CPR to the child at the foot of the bed. The paramedic noted the child's heart had stopped, and he appeared to have been without oxygen for some time. The paramedic observed no evidence of trauma or injury to the child. The child arrived at the hospital at approximately 4:50 a.m. After he was examined by a doctor, treatment

was discontinued. Dr. Bogdan A. Chumak reported the cause of death as SIDS (sudden infant death syndrome). According to various observers, the parents were distraught, sad, and exhibited the grief normal following the sudden death of their child. Neither parent appeared to be intoxicated.

Dr. Jeffrey Barnard, Chief Medical Examiner of Dallas County, testified regarding the autopsy of Tristan. The child appeared developmentally normal. No drugs were identified in the blood that was examined or in spinal fluid cultures. Tristan's heart was structurally normal. No disease was identifiable either from looking at the organs or examining them under a microscope. He found no head injury or evidence of other trauma. "There was nothing in the airway that demonstrated a large aggregate of mucous or anything in the lungs to show an obstruction from that." There were no congenital anomalies or birth defects reported or allergies known. Dr. Barnard found the cause of death to be undetermined. He said the autopsy report was consistent with SIDS, the stated cause of death in the "Record of Death" made by Dr. Chumak.

Dr. Barnard testified that the only things left that he "could not eliminate would be mechanical compression or an asphyxial type of death–in some form the child was unable to breathe–or some sort of cardiac irregularity." He also could not negate some electrical abnormality.

Appellant gave a blood sample at Lufkin Memorial Hospital at 1:00 p.m. on July 9, 2010, the date of the baby's death. Analysis of the sample showed levels of alprazolam (Xanax) of 0.16 milligrams per liter and hydrocodone (Vicodin) of 0.09 milligrams per liter. Testimony described the level of both drugs as quite high. The level of Xanax ("prescribed for anxiety, panic disorders . . . sometimes phobias") was characterized as "quite high–generally higher than what is considered therapeutic." Appellant had prescriptions for both drugs.[1] Dr. Barnard testified that alprazolam is an anti-anxiety medication, one of whose common side effects is sedation. Hydrocodone (Vicodin) is a pain medication that can have a side effect of drowsiness or sluggishness.

Tony Jasso of the Department of Family and Protective Services testified that the Department does not recommend "co-sleeping" with a child, and provides brochures regarding the dangers of bed sharing. Amanda Mott, formerly an investigator with Children's Protective

---

[1] Appellant suffered from bipolar disorder.

2

Services (CPS), testified she visited the Clarks once in May and once in June 2009 and gave Appellant a brochure concerning the risks of co-sleeping. She said she told Appellant it was dangerous for the child. Lisa Soto, a former supervisor for CPS, testified that she believed that it was never advisable for an infant to sleep in an adult's bed.

## SUFFICIENCY OF THE EVIDENCE

In her first issue, Appellant contends the evidence is insufficient to support her conviction for child endangerment.

### Standard of Review

In reviewing a claim of insufficiency of the evidence, an appellate court views all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

### Applicable Law

A person commits an offense if she intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than fifteen years in imminent danger of death, bodily injury, or physical or mental impairment. TEX. PENAL CODE ANN. § 22.041(c) (West 2011).

"Imminent" means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex. App.–Austin 2002, pet. ref'd) (quoting *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989)). "[T]o be imminent for [the purpose] of imposing responsibility pursuant to Penal Code § 22.041(c), the situation must be immediate and actual, not potential or future, at the moment of the act or omission by the defendant." *Newsom v. B.B*., 306 S.W.3d 910, 918 (Tex. App.–Beaumont 2010, pet. denied). The danger must be imminent at the moment the defendant engages in the conduct. *Id*. Conduct that places a child in a potentially dangerous situation is not sufficient for conviction. *Millslagle*, 81 S.W.3d at 898.

Article 21.15 of the code of criminal procedure provides as follows:

> Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an

3

offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege that the accused, in committing the offense, acted recklessly or with criminal negligence.

TEX. CODE CRIM. PROC. ANN. art. 21.15 (West 2009). At trial, the state is limited to the acts alleged in the charging instrument to prove the recklessness or criminal negligence of the conduct. *See Cadenhead v. State*, 369 S.W.2d 44, 45 (Tex. Crim. App. 1963); 42 George E. Dix & John M. Schmolesky, *Texas Practice Series: Texas Criminal Practice & Procedure* § 25:98 (3d ed. 2011).

**Discussion**

The dispositive question in this case is whether the culpable conduct alleged, Appellant's placing the child in bed with her and going to sleep, represented an "imminent" danger of death or bodily injury to the child.

A measure of the imminence of a danger is the nature of the response the danger should provoke. Once observed by those in a position to act, an imminent danger of death or bodily injury to a child justifies, in fact demands, urgent intervention to remove the child from the danger. This is illustrated by our case law in which our courts have consistently affirmed convictions where an immediate effort to remove the child or children from the danger was the only appropriate course.

In *Rodriguez v. State*, 137 S.W.3d 758, 762-63 (Tex. App.–Houston [1st Dist.] 2004, no pet.), the court affirmed the child endangerment conviction of an intoxicated driver who failed to slow down when another car turned in front of him and the vehicles collided. In *Wahlig v. State*, No. 03-07-00695-CR, 2009 WL 884779, at *4-5 (Tex. App.–Austin Mar. 27, 2009, pet. ref'd) (mem. op., not designated for publication), the court affirmed the conviction of the defendant who set fire to a house with children inside. Another child endangerment conviction was affirmed in *Teeter v. State*, No. 05-06-00309-CR, 2007 WL 510356, at *6-12 (Tex. App.–Dallas Feb. 20, 2007, no pet.) (op., not designated for publication). In that case, the defendant, an intoxicated school bus driver, drove his school bus filled with children at a high rate of speed, swerved, and nearly turned the bus over while turning without slowing. *Id*. at *1-2. The same result obtained in another intoxicated school bus driver case where the intoxicated driver appeared to fall asleep, failed to negotiate a turn, and drove the bus with children inside into a ditch. *Pittman v. State*, No. 14-03-01296-CR, 2005 WL 1149819, at *1 (Tex. App.–Houston

4

[14th Dist.] Jan. 20, 2005, no pet.) (mem. op., not designated for publication). In *Head v. State*, No. 09-06-00028-CR, 2006 WL 3742800, at *2-4 (Tex. App.–Beaumont Dec. 20, 2006, no pet.) (mem. op., not designated for publication), the intoxicated defendant drove at an excessive speed with three children in his car. And finally, in *Steinecke v. State*, No. 01-05-00813-CR, 2007 WL 1119890, at *4-6 (Tex. App.–Houston [1st Dist.] Apr. 12, 2007, no pet.) (mem. op., not designated for publication), the defendant, probably intoxicated, took no action to remove his children from the back seat of his burning car that had run off the road.

On the other hand, when the danger was potential, but not immediate or about to happen, the courts have concluded the danger was not imminent. In *Millslagle*, the defendant left a three year old boy unattended in his pickup while he crawled into the attic of a nearby toilet to use methamphetamine. The culpable conduct alleged was that the appellant left the child alone for forty-five minutes while using drugs. *Millslagle*, 81 S.W.3d at 896-97. The court reversed the conviction for endangering a child and rendered judgment convicting the appellant of leaving a child unattended in a vehicle. *Id*. at 898-99. In *Elder v. State*, 993 S.W.2d 229, 230-31 (Tex. App.–San Antonio 1999, no pet.), the court held that the defendant did not place her eight year old daughter in imminent danger by permitting a man on probation for indecency with a child to move into their house, although the child was eventually assaulted by the probationer.

In *Medearis v. State*, No. 11-04-00201-CR, 2006 WL 1913488, at *2-3 (Tex. App.–Eastland July 13, 2006, no pet.) (op., not designated for publication), the defendant slept while a four year old and a two year old child for whom he was responsible played unattended in the unfenced front yard. A neighbor noticed the children yelling and crying, trying unsuccessfully to get back in the house. The court found the situation potentially dangerous, but held that it did not rise to the level of imminent danger. The court reached the same conclusion in *Salazar v. State*, No. 10-07-00335-CR, 2008 WL 2374941, at *2 (Tex. App.–Waco June 11, 2008, pet. ref'd) (mem. op., not designated for publication). In that case, the defendant's two and three year old children climbed out of a window and ran into a busy street while the defendant talked on the telephone. In *Moody v. State*, No. 01-03-00685-CR, 2004 WL 1472216, at *2-3 (Tex. App.–Houston [1st Dist.] July 1, 2004, no pet.) (mem. op., not designated for publication), the defendant's three year old son and two year old daughter were routinely allowed to play without apparent supervision in an unfenced front yard near a busy road. They were often seen in cold weather wearing only diapers. Their residence was dirty, nasty, smelly, and unsanitary. The

court held that the situation of the children was potentially dangerous, but that the danger was not "imminent" as required by the statute.

In *Moreno v. State*, No. 07-01-00441-CR, 2003 WL 21516575, at \*2-3 (Tex. App.–Amarillo July 3, 2003, no pet.) (mem. op., not designated for publication), the defendant, arrested for DWI, left a ten month old baby, an eight year old child, and a ten year old child home alone in the care of a twelve year old in an unsanitary house infested with cockroaches where the children slept on the wood floors. The court rendered a judgment of acquittal stating that "placing a child in a potentially dangerous situation is insufficient to support a conviction for endangering a child." The court reached the same result in *Bordelon v. State*, No. 09-96-00305-CR, 1998 WL 770449, at \*2 (Tex. App.–Beaumont Nov. 4, 1998, no pet.) (not designated for publication). The defendant and a co-worker moved a heavy object through part of a day care center. The defendant left to answer the phone and instructed the co-worker to wait for her return. Instead, the co-worker attempted to move the object unassisted, which fell on the child and killed her.

To sustain a conviction for endangering a child, the danger must have been imminent at the moment the defendant engaged in the culpable conduct alleged. *Newsom*, 306 S.W.3d at 918. The endangering conduct alleged in this case is Appellant's sleeping with her child. Had it been possible to apprehend Appellant immediately upon her taking Tristan from his crib, placing him in bed with her, and falling asleep, no sense of urgency would have attended the discovery. Her conduct might have reasonably provoked a warning or a rebuke, but prosecution for child endangerment would not have been considered. Common experience confirms that Appellant's conduct is not an uncommon parental response to a crying infant in the middle of the night. Bed sharing with an infant has not been proscribed by our legislature, prohibited by agency rule, or served as a basis for criminal prosecution in our courts.

There can be little question that Appellant's prosecution was impelled, not by the nature of Appellant's conduct, but by Tristan's tragic subsequent death. But the record does not show that Tristan's death was a result or consequence of Appellant's sleeping with him. The evidence does not show that Tristan died because he was in bed with his mother; it shows only that he died while in bed with her. Dr. Barnard, the Chief Medical Examiner of Dallas County who testified to the autopsy results, acknowledged that bed sharing with the infant was an attendant circumstance. But he could not conclude that Tristan's death was a consequence of his sleeping

with his mother. The autopsy showed a well-formed, well-nourished child with no evidence of disease, abnormality, trauma, or other indication of abuse. No lint or other obstruction was found in his air passages that would indicate he died of suffocation. Dr. Barnard testified that although suffocation could not be excluded as the cause of death, neither could a variety of other possible causes. Dr. Barnard found the cause of death to be "undetermined." Dr. Chumak, who signed the death certificate, determined sudden infant death syndrome was the cause, which is essentially the same conclusion reached by Dr. Barnard.

The record reflects that the majority of informed opinion on the subject considers bed sharing with an infant to be unwise. We are convinced that when Appellant took the crying child from its crib, placed him in bed with her, and fell asleep, she was placing him in a potentially dangerous situation. But we are unpersuaded that, at that moment, the danger was so immediate or menacingly near as to constitute imminent danger of death, bodily injury, or physical or mental impairment. Viewing the evidence in the light most favorable to the verdict, we conclude that there is insufficient evidence to support a finding that the conduct alleged placed the child in imminent danger. Appellant's first issue is sustained.

Because the evidence is legally insufficient to support Appellant's conviction, we need not address her second issue.

### DISPOSITION

Having sustained Appellant's first issue, we *reverse* the judgment of the trial court and *render* a judgment of *acquittal*.

BILL BASS
Justice

Opinion delivered November 6, 2013.
*Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### NOVEMBER 6, 2013

### NO. 12-12-00287-CR

### VANESSA LYNN CLARK,
Appellant
V.
### THE STATE OF TEXAS,
Appellee

Appeal from the 159th Judicial District Court
of Angelina County, Texas. (Tr.Ct.No. 2011-0267)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment of the trial court be **reversed** and a judgment of **acquittal** be rendered, and the same is, hereby entered herein in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Griffith, J., Hoyle, and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*