In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00375-CR
NO. 09-14-00376-CR
_____

**DARRELL WAYNE SPARKMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. 23427, 23428**

**MEMORANDUM OPINION**

Darrell Wayne Sparkman appeals his convictions for the offenses of endangering a child and for possession of a controlled substance, namely methamphetamine. After finding two enhancement paragraphs true, the jury assessed punishment for Sparkman at six years in prison and a $1,000 fine for the offense of endangering a child and eight years in prison and a $1,000 fine for the offense of possession of a controlled substance. Sparkman challenges the legal

1

sufficiency of the evidence for both convictions. We conclude the evidence is legally sufficient to show that Sparkman possessed a controlled substance, and, therefore, we affirm his conviction in cause number 09-14-00376-CR. Because the evidence is legally insufficient to show that Sparkman endangered a child, we reverse the trial court's judgment and render a judgment of acquittal in cause number 09-14-00375-CR.

## Background

On April 2, 2014, around 1:30 p.m., Amberlea Duke went to her mailbox. While outside, she noticed the small child, who lives next to her, running down the road away from his trailer house, wearing only a diaper. Amberlea believed the child to be two years old. The child was unsupervised for the length of time Amberlea was watching him, which was approximately twelve minutes. Although no vehicles were on the road while Amberlea was watching the child, she believed the child was in imminent danger of mental impairment, death, or bodily injury. Consequently, Amberlea called her husband, Billy Duke, a detective with the Polk County Sheriff's Department and told him about the unsupervised child.

When Officer Duke arrived at the scene, he observed the child climbing on the fence. Officer Duke approached the child and asked the child who was supposed to be watching him. The child responded by bringing Officer Duke into

2

the trailer house on the property. Officer Duke located Sparkman in the living room of the trailer house. Sparkman was allowed to live in the trailer house by the child's father in exchange for watching the child while the father was at work. During the course of his investigation, Officer Duke discovered drug paraphernalia and a lightbulb that contained a trace amount of residue—ultimately identified as methamphetamine.

Sparkman was charged with endangering a child and possession of a controlled substance. The jury found Sparkman guilty of the charged offenses and assessed punishment. Sparkman appeals his convictions. He raises two issues in which he asserts that the evidence was not sufficient to support the judgments of conviction.

## Sufficiency of the Evidence

In a sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 894-95, 899 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic

3

facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319). When the record of historical facts supports conflicting inferences, we must presume the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

**Child Endangerment**

Sparkman attacks the sufficiency of the evidence to prove that he endangered a child. He specifically contends the evidence is insufficient to show that he placed the child in "imminent" danger. The record reflects that the charge

4

and the indictment tracked the language of the statute, except that they also included the manner and means in which the child was allegedly endangered—i.e., by "inadequately supervising the below named child, resulting in the child roaming in or near a roadway[.]" A person commits the offense of endangering a child when he "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." Tex. Penal Code Ann. § 22.041(c) (West 2011).

The word "imminent" is not defined in the Texas Penal Code, but generally means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex. App.—Austin 2002, pet. ref'd)(citation and punctuation omitted). It is insufficient that a defendant "placed the child in a situation that is potentially dangerous[;]" rather, the defendant's conduct "must threaten the child with immediate, impending death, bodily injury, or impairment." *Id*. "[T]o be 'imminent' for [the purpose] of imposing responsibility pursuant to Penal Code § 22.041(c), the situation must be immediate and actual, not potential or future, at the moment of the act or omission by the defendant." *Newsom v. B.B.*, 306 S.W.3d 910, 918 (Tex.

App.—Beaumont 2010, pet. denied). "[T]he danger must be imminent at the moment the defendant engages in the conduct." *Id*.

Based on the record before us, Amberlea was the only person that observed the child in the road that day. We can look to Amberlea's response to the child's situation as a measure of the imminence of the danger in which he was placed. Imminent danger of death or bodily injury to a child demands urgent intervention to remove the child from the danger. Therefore, once Amberlea perceived that danger, one might suspect that she would act accordingly.

However, Amberlea testified that there were no vehicles on the road when she was watching the child. The record reflects that the situation never became so serious that Amberlea felt the need to run after the child to prevent the child from being harmed. Amberlea testified that the child was approximately twenty to thirty yards from her position. When the child entered the road, she called to him, and he returned to his yard. According to Amberlea, the child was left unsupervised for approximately twelve minutes.

The incident occurred close to the end of a dirt road. Amberlea described the road as a dead-end, dirt road, which was not positioned directly off a highway. Amberlea testified that there are approximately ten residences on the road, but that many people enter the road to turn around. However, there is no evidence in the

6

record that any vehicles entered the road to turn around or otherwise, while the child was in the road.

The father of the child testified that at the time of the incident, the child was three years old. The father explained that the yard was fully fenced-in, and Sparkman should have closed the gate when he allowed the child to play outdoors. The father expressed his belief that it was dangerous for his child to be in the road. The father acknowledged that the road is not highly traveled.

The State relies on *Herbst v. State*, 941 S.W.2d 371 (Tex. App.—Beaumont 1997, no pet), to support its position that the child in this case was placed in imminent danger. Quoting from *Herbst*, the State argues that "[a]lthough a speeding car barreling down on the child would have increased the risk of serious injury or death, the facts presented at trial showed an immediate risk of at least bodily injury due to his age and . . . 'the unpredictable and untameable elements of nature[.]'" *See id*. at 373-74. In *Herbst*, the appellant placed a three-week-old baby on the side of a well-traveled, dark road at approximately 10:00 p.m. and left. *Id*. at 373. The baby was strapped into an infant car seat and left outdoors without supervision, food, and shelter. *Id*. at 373-74. We find the facts in *Herbst* distinguishable. The child in this case was three years old. He was not intentionally

7

left on the side of a busy road. He was allowed to play unsupervised in his yard for less than twenty minutes.

The State also suggests that the child was placed in imminent danger due to roaming dogs in the neighborhood. As support for this proposition, the State indicates that the child had been bitten by a dog when he was near the road in the past. In its brief, the State does not cite to the record for support of this argument. However, Sparkman agreed that one of the neighbor's dogs had bitten the child, but he explained that the child's mother had taken the child into the dog's yard. There is no evidence in the record to dispute this testimony. The State also notes that a neighborhood dog attacked a CPS caseworker during the investigation. Officer Duke testified that while officers were processing the scene, two dogs from inside an adjacent trailer house forced their way outside. One of the dogs attacked the CPS caseworker as well as another officer, and, as a result, was shot. Officer Duke testified that there are several larger dogs in the neighborhood. He testified that he does not allow his nine-year-old daughter to walk down the road because of the loose animals. Even if the State was not limited by the manner and means alleged in the indictment, which focused on Sparkman's allowing the child to roam in or near a roadway, there is no evidence that danger from a roaming dog was

8

imminent. There is no testimony that there were loose dogs anywhere in the proximity of the child during the relevant time period.

Here, the evidence supports that Sparkman placed the child in a *potentially* dangerous situation by allowing him to play outdoors without adequate supervision. We conclude that a rational factfinder could not determine beyond a reasonable doubt, based on the evidence in the record, that Sparkman placed the child in imminent danger. No evidence shows that physical pain or impairment was ready to take place. *See Millslagle*, 81 S.W.3d at 898. The evidence suggests that the situation *could* have turned for the worse, that the child *could* have been seriously injured, but that does not satisfy a showing of imminent danger. We conclude that no rational factfinder could have determined that Sparkman placed the child in imminent danger of death, bodily injury, or physical and mental impairment. Because we have found the evidence insufficient to sustain the conviction for the offense of endangering a child, we sustain Sparkman's issue. We reverse the judgment of the trial court and render a judgment of acquittal in Cause No. 23427 of the 411th District Court of Polk County, Texas.

### Possession of a Controlled Substance

Sparkman also challenges the sufficiency of the evidence to support his conviction for the offense of possession of a controlled substance—

methamphetamine. Specifically, Sparkman contends the evidence is insufficient to prove that he intentionally or knowingly possessed the methamphetamine, which was located inside a lightbulb that was found inside the drawer of a dresser, located outside on the porch.

The record reflects that the actual charge was consistent with the hypothetically correct jury charge for this offense, which required the State to prove that Sparkman intentionally or knowingly possessed a controlled substance, namely methamphetamine, in an amount of less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(a), (b) (West 2010). To prove unlawful possession of a controlled substance, the State must prove: (1) that the defendant exercised care, custody, control, or management over the substance; and (2) that he knew the matter possessed was contraband. *Id*. § 481.115(a); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

There must be direct or circumstantial evidence that establishes "'that the accused's connection with the drug was more than just fortuitous.'" *Poindexter*, 153 S.W.3d at 406 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). A defendant's mere presence in the same place as the controlled substance alone is not sufficient to justify a finding of possession. *Evans*, 202 S.W.3d at 162.

10

The "affirmative links" rule protects innocent bystanders from conviction merely because of his or her fortuitous proximity to someone else's drugs. *Evans*, 202 S.W.3d at 161-62. Presence or proximity to the controlled substance, combined with evidence of affirmative links may be sufficient to establish that element beyond a reasonable doubt. *Id.* at 162. In the context of a charge of possession of a controlled substance, the following list of nonexclusive factors, either alone or in combination, have been found to be sufficient to prove knowing possession: (1) the defendant's presence when the search was conducted; (2) the contraband was in plain view; (3) the defendant's proximity to and the accessibility to the contraband; (4) the defendant was under the influence of the contraband when arrested; (5) the defendant possessed other contraband when arrested; (6) the defendant made incriminating statements when arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures; (9) the presence of a residual odor of the contraband; (10) the presence of other contraband or drug paraphernalia; (11) the defendant owned or had the right to possess the place where the drugs were found; (12) the contraband was recovered from an enclosed place; (13) the defendant was found with a large amount of cash; and (14) the defendant's conduct indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12. These factors may circumstantially justify the conclusion that the defendant knowingly possessed the

11

contraband. *Id.* The number of factors found is not as important as the logical force those factors create to prove the crime was committed. *Id*. at 162.

Sparkman contends that a number of other people could have hidden the drugs on the porch. Other than Sparkman, the child and the child's father, the child's mother and a girlfriend of Sparkman also lived in the trailer house at different times. At the time the drugs were found by the police, Sparkman and the father of the child were the only adults living in the trailer house. However, the relevant question on appeal is whether there are sufficient affirmative links to connect Sparkman to the methamphetamine found hidden on the front porch, not whether the drugs could have belonged to someone else.

At trial, Officer Duke testified that while he was inside the trailer house questioning Sparkman about the child, he noticed a marijuana pipe sitting on the coffee table. Sparkman told Officer Duke that the pipe was for smoking cigarette tobacco, but denied that he personally used it for anything. Officer Duke believed the pipe had a burnt marijuana or synthetic marijuana odor. Because the pipe was in plain view, Officer Duke seized the pipe.

Sparkman denied having anything illegal on his person or in the trailer house and consented to Officer Duke searching his person. Officer Duke found a flashlight with no batteries in Sparkman's pocket, which Sparkman claimed he

12

found in the yard. Officer Duke testified that based on his experience, an empty flashlight is common and consistent with drug activity. Officer Duke found a residue inside the flashlight, which he thought was either marijuana or synthetic marijuana.

Sparkman denied using drugs and testified that he told Officer Duke that he would submit to a drug test and believed he would test negative. After finding the hollowed-out flashlight, Officer Duke asked to search the common areas of the trailer house as well as Sparkman's room, and Sparkman consented. During the search, Officer Duke found an empty bag of synthetic marijuana in Sparkman's bedroom and a lightbulb that had been modified for methamphetamine consumption in a dresser on the porch of the trailer house. Officer Duke testified that while living next door, he had seen Sparkman several times on the porch by the dresser.

Sparkman eventually admitted to Officer Duke that he had used the synthetic marijuana and that the empty bag was his. Sparkman continued to deny any knowledge about the lightbulb. Sparkman also denied using methamphetamine. Officer Duke again asked Sparkman to consent to a drug test. This time, Sparkman refused the drug test and told Officer Duke to just take him to jail.

While in transport to the jail, Officer Duke continued his conversation with Sparkman. Officer Duke's dashboard camera recorded the conversation, and the recording was admitted into evidence. Officer Duke testified that while loading Sparkman into the car to take him to jail, he asked Sparkman when Sparkman had last used methamphetamine. The dashboard camera captured Sparkman's response as follows:

> I did it a few years back for about a year. And, that last girlfriend I just had that just left out of here, did it a couple of times with her. That's where that probably came from, whenever she was here. So, yeah.

Officer Duke asked when the girlfriend had left, and Sparkman responded that she had left two to three weeks ago. Officer Duke testified that Sparkman told him that he had forgotten about the "meth pipe" and then admitted to having "'a little paraphernalia[.]'"

Sparkman told Officer Duke that the child's father did not use methamphetamine. Jeremy Stutts, with Child Protective Services (CPS), also spoke to Sparkman about the child's father. Sparkman told Stutts that the father was not aware of the drug paraphernalia or the drug use occurring in the trailer house.

The child's father testified that the child's mother was addicted to opiates at the time of the child's birth. The mother had supervised visitation with the child, and had lived at the trailer house for a short time in the past.

14

The father testified that he was contacted about what had happened with the child and told that the child had been removed and was in the care of his grandparents. The next day, CPS administered a drug test to the father; he tested negative. The father denied possessing methamphetamine at his trailer house. He admitted that he had used methamphetamine in the past, but testified he has not used it in a couple of years. The father admitted to possessing marijuana at the trailer house, but testified he had not "smoked a joint" in several months. He testified that he was not aware that there were methamphetamine pipes in the trailer house. While the father was aware that Sparkman used drugs, the father testified that Sparkman "wasn't supposed to be strung out" while he was watching the child.

During Sparkman's testimony, he admitted that he has been arrested ten to fifteen times. Sparkman testified at length regarding his extensive criminal history. Sparkman also testified, very clearly, that it was his belief that the first thing a drug-user is going to do is lie about using drugs. Sparkman then admitted to lying to officers not only about the father's treatment of the child, but also about the father's drug use and his own drug use.

Sparkman denied that the lightbulb was his, and then tried to show that the lightbulb could have belonged to multiple people. According to Sparkman,

15

everyone had access to the front porch. Sparkman testified that he told Officer Duke that he had a woman stay with them for approximately three weeks, that they had to kick her out, and that the lightbulb could possibly have been hers. Sparkman admitted that he smoked methamphetamine with the woman, but explained that he used his own pipe to smoke it and not the lightbulb.

Sparkman also expressed his belief that the lightbulb could have belonged to the child's father, who also, according to Sparkman, actively used drugs, including methamphetamine and synthetic marijuana.

Sparkman testified that he agreed to submit to a drug test the first time Officer Duke asked him if he would be willing to take a test. He explained that the only reason he refused to take the test the second time was because he knew he was going to jail regardless of what the test revealed. However, Sparkman admitted that the empty synthetic marijuana bag was his and that the marijuana pipe was his as well. He testified that he smoked synthetic marijuana and cigarette tobacco out of the pipe.

Stutts, with CPS, corroborated the father's testimony that he had been tested for drug use, including marijuana and methamphetamines, and had passed all tests administered to him, including one test that can reflect drug use for the past seventy-five to ninety days.

16

Considering the factors identified above, we conclude the record reveals ample evidence tending to connect Sparkman to the methamphetamine. Sparkman was present in the trailer house during the search. The dresser in which the lightbulb containing the methamphetamine was found was positioned directly outside Sparkman's bedroom on the porch, in an area that he was known to frequent. The trailer house was surrounded by fence and not generally accessible to the public. Sparkman admitted to recently smoking methamphetamine. Sparkman admitted to possessing other drug paraphernalia. The officer discovered an empty synthetic marijuana bag in Sparkman's bedroom, and Sparkman admitted the bag was his. The officer also discovered a flashlight without batteries on Sparkman's person that had residue inside of it. Based on all of the above evidence, which demonstrates Sparkman's involvement with drugs, we cannot say that Sparkman's connection to the methamphetamine was merely fortuitous. *See Poindexter*, 153 S.W.3d at 405.

Viewing the evidence in the light most favorable to the verdict, we hold there is sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that Sparkman was sufficiently linked to the contraband, and that Sparkman was guilty of the offense of possession of methamphetamine. *See id.* at 405-06; *Evans*, 202 S.W.3d at 162. Because we have found the evidence sufficient

17

to sustain the conviction for possession of a controlled substance, we overrule Sparkman's issue on this point. We therefore affirm the judgment of the trial court in Cause No. 23428 of the 411th District Court of Polk County, Texas.

The judgment of the trial court in Cause No. 23427 of the 411th District Court of Polk County, Texas, is reversed and judgment of acquittal is rendered in such cause. The judgment of the trial court in Cause No. 23428 of the 411th District Court of Polk County, Texas, is affirmed.

REVERSED AND ACQUITTAL RENDERED IN CAUSE NO. 23427.

AFFIRMED IN CAUSE NO. 23428.

_____

CHARLES KREGER
Justice

Submitted on April 17, 2015
Opinion Delivered August 12, 2015
Do not publish

Before Kreger, Horton, and Johnson, JJ.