ACCEPTED
03-15-00233-CR
7220822
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/5/2015 9:37:14 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00233-CR

## IN THE COURT OF APPEALS
## THIRD DISTRICT
## AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/5/2015 9:37:14 AM
JEFFREY D. KYLE
Clerk

_____

**ISREAL REYES, SR. Appellant**

*v.*

**THE STATE OF TEXAS**

_____

**ON APPEAL FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
TRIAL COURT CAUSE NUMBER CR2012-428**

_____

**BRIEF FOR APPELLANT**

_____

**Richard E. Wetzel**
**State Bar No. 21236300**
**1411 West Ave., Suite 100**
**Austin, Texas 78701**
**(512) 469-7943**
**(512) 474-5594**
**wetzel_law@1411west.com**
**Attorney for Appellant**
**Isreal Reyes, Sr.**

**ORAL ARGUMENT REQUESTED**

## Identity of Parties and Counsel

Appellant:                                   Isreal Reyes, Sr.

Trail Counsel for Appellant:          Mr. Joseph E. Garcia
Attorney at Law
200 North Seguin
P.O. Box 310702
New Braunfels, Texas 78131

Appeal Counsel for Appellant:       Richard E. Wetzel
Attorney at Law
1411 West Ave., St. 100
Austin, Texas 78701

Appellee:                                    State of Texas

Trial Counsel for Appellee:           Christine P. Rankin
Daniel A. Palmitier
Assistant Criminal District Attorneys
150 North Seguin, Suite 307
New Braunfels, Texas 78130

Appeal Counsel for Appellee:        Josh Presley
Assistant Criminal District Attorney
150 North Seguin, Suite 307
New Braunfels, Texas 78130

Trial Judge:                               Hon. Jack Robison
207th District Court
Comal County, Texas

# Table of Contents

**Page**

List of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . .. . . . . . . .. . . . . . . . .iv

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . .12

Point of Error One . . . . . . . . . . . . . . . . . . . . . . . . . . .16

The evidence is insufficient to prove the complainant sustained serious bodily injury in the aggravated assault conviction.

Point of Error Two . . . . . . . . . . . . . . . . . . . . . . . . . . .25

The evidence is insufficient to prove an imminent danger of death, bodily injury, or physical impairment to the unborn child in the endangering a child conviction.

Point of Error Three . . . . . . . . . . . . . . . . . . . . . . . . . . .30

The trial court failed to admonish Reyes on the deportation consequences of his plea of guilty to unlawful possession of a firearm (3 RR 13).

Point of Error Four . . . . . . . . . . . . . . . . . . . . . . . . . . .33

The judgment for court count two should be reformed to reflect Reyes was convicted of the state jail felony offense of endangering a child (CR 60).

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . .35

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . .36

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

**Index of Authorities**

**Page**

**Cases**

*Aguirre–Mata v. State,* 125 S.W.3d 473
(Tex. Crim. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

*Anderson v. State,* 182 S.W.3d 914
(Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*Banargent v. State*, 228 S.W.3d 393
(Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) . . . . . . . . . . . . . . . . .22

*Bowen v. State*, 374 S.W.3d 427
(Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Brooks v. State,* 323 S.W.3d 893
(Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Brown v. State,* 605 S.W.2d 572
(Tex. Crim. App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Campbell v. State*, 49 S.W.3d 874
(Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Carter v. State,* 678 S.W.2d 155
(Tex. App.-Beaumont 1984, no pet.) . . . . . . . . . . . . . . . . . . . . . . . .22

*Coshatt v. State,* 744 S.W.2d 633
(Tex. App.-Dallas 1987, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . .22

*Fancher v. State,* 659 S.W.2d 836
(Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Ford v. State*, 334 S.W.3d 230
(Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Hart v. State,* 581 S.W.2d 675
(Tex. Crim. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Hernandez v. State*, 946 S.W.2d 108
(Tex. App.—El Paso 1997, no pet.) . . . . . . . . . . . . . . . . . . . . . .21

*Hooper v. State,* 214 S.W.3d 9
(Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Howell v. State*, 563 S.W.2d 933
(Tex. Crim. App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Hwang v. State,* 130 S.W.3d 496
(Tex. App.-Dallas 2004, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . .31

*Jackson v. State*, 288 S.W.3d 60
(Tex. App. – Houston [1st Dist.] 2009, pet. ref'd) . . . . . . . . . . . . . . . . .35

*Jackson v. Virginia,* 443 U.S. 307
(1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Kelley v. State*, 237 S.W.3d 906
(Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) . . . . . . . . . . . . . . . . .32

*Lancon v. State,* 253 S.W.3d 699
(Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Land v. State*, 291 S.W.3d 23
(Tex. App. – Texarkana 2009, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . .35

*Malik v. State,* 953 S.W.2d 234
(Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*McCoy v. State,* 932 S.W.2d 720
(Tex. App.-Fort Worth 1996, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . .22

*Millslagle v. State,* 81 S.W.3d 895
(Tex. App.–Austin 2002, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . .29

*Moore v. State,* 278 S.W.3d 444
(Tex. App.-Houston [14th Dist.] 2009, no pet.) . . . . . . . . . . . . . . . . . . . .31

*Moore v. State,* 739 S.W.2d 347
(Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Moore v. State,* 802 S.W.2d 367
(Tex. App.-Dallas 1990, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Newsom v. B.B.,* 306 S.W.3d 910
(Tex. App.–Beaumont 2010, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . .29

*Padilla v. State,* 326 S.W.3d 195
(Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Pitts v. State,* 742 S.W.2d 420
(Tex. App.-Dallas 1987, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Sizemore v. State*, 387 S.W.3d 824
(Tex. App.—Amarillo 2012, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Splawn v. State*, 160 S.W.3d 103
(Tex. App. - Texarkana 2005, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . .35

*State v. Webb*, 12 S.W.3d 808
(Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Stuhler v. State,* 218 S.W.3d 706
(Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Thornton v. State*, 425 S.W.3d 289
(Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Vannortrick v. State,* 227 S.W.3d 706
(Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*Webb v. State,* 801 S.W.2d 529
(Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

vi

*Winfrey v. State,* 393 S.W.3d 763
(Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

**Statutes**

TEX. CRIM. PROC. CODE art. 26.13(a)(1) . . . . . . . . . . . . . . . . . .31

TEX. CRIM. PROC. CODE art. 26.13(a)(4) . . . . . . . . . . . . . . . . . .31

TEX. CRIM. PROC. CODE art. 42.01 § 14 . . . . . . . . . . . . . . . . . .34

TEX. PEN. CODE § 1.07(a)(8) . . . . . . . . . . . . . . . . . . .20

TEX. PEN. CODE § 1.07(a)(46) . . . . . . . . . . . . . . . . . . .20

TEX. PEN. CODE § 12.35(a) . . . . . . . . . . . . . . . . . . .34

TEX. PEN. CODE § 12.35(c) . . . . . . . . . . . . . . . . . . .34

TEX. PEN. CODE § 12.35(c)(1) . . . . . . . . . . . . . . . . . . .33

TEX. PEN. CODE § 22.01(a)(1) . . . . . . . . . . . . . . . . . . .20

TEX. PEN. CODE § 22.02(a) . . . . . . . . . . . . . . . . . . .16

TEX. PEN. CODE § 22.02(b)(1) . . . . . . . . . . . . . . . . . . .16

TEX. PEN. CODE § 22.041(c) . . . . . . . . . . . . . . . . . . .29

TEX. PEN. CODE § 22.041(f) . . . . . . . . . . . . . . . . . . .33

**Rules**

TEX. R. APP. P. 9.4 . . . . . . . . . . . . . . . . . . .36

TEX. R. APP. P. 43.2(b) . . . . . . . . . . . . . . . . . . .35

TEX. R. APP. P. 44.2(b) . . . . . . . . . . . . . . . . . . .33

## Statement of the Case

This is an appeal from a criminal proceeding. Isreal Reyes, Sr., was indicted by a Comal County grand jury for the offenses of aggravated assault, endangering a child, and unlawful possession of a firearm (CR 11). A jury was selected and sworn (2 RR 145, 147). Reyes entered pleas of not guilty to aggravated assault and endangering a child and a plea of guilty to unlawful possession of a firearm (3 RR 13). The jury found him guilty of all three offenses (CR 45, 48, and 49, 5 RR 90). Reyes elected for the jury to assess punishment (CR 39). The jury assessed punishment at 20 years for aggravated assault, 10 years for endangering a child, and 10 years for unlawful possession of a firearm (CR 70 – 72, 6 RR 86). The sentences were ordered to run concurrently (CR 57, 60, and 63, 6 RR 86). Reyes was sentenced in open court (6 RR 86).

Reyes previously attempted to appeal these convictions and the appeal was dismissed due to an untimely notice of appeal (CR 90). An out of time appeal was granted by the Court of Criminal Appeals (1st Supp. CR 5). Notice of appeal was timely filed (CR 101). The trial court certified Reyes' right to appeal (CR 73).

1

**Issues Presented on Appeal**

**Point of Error One**

**The evidence is insufficient to prove the complainant sustained serious bodily injury in the aggravated assault conviction.**

**Point of Error Two**

**The evidence is insufficient to prove an imminent danger of death, bodily injury, or physical impairment to the unborn child in the endangering a child conviction.**

**Point of Error Three**

**The trial court failed to admonish Reyes on the deportation consequences of his plea of guilty to unlawful possession of a firearm (3 RR 13).**

**Point of Error Four**

**The judgment for court count two should be reformed to reflect Reyes was convicted of the state jail felony offense of endangering a child (CR 60).**

## Statement of Facts

On June 6, 2012, Comal County Deputy Sheriff Jared Medrano responded to a reported shooting at a home near Canyon Lake in Comal County (3 RR 24). Upon his arrival at the scene, Medrano encountered Shawna Flowers who was hysterical and asking him to help her sister Billie Jean McCann (3 RR 27). Flowers told the officer she was inside her home and McCann was on the porch when McCann was shot (3 RR 44). Flowers did not see the shooting, but she heard a gunshot followed by her sister yelling "you shot me" and Reyes responding "no, I didn't" (3 RR 44). Flowers provided Medrano with a description of Reyes and his vehicle (3 RR 30).

When Medrano initially approached McCann, she had a towel pressed to her face (3 RR 46). McCann removed the towel and Medrano saw blood coming from a wound to McCann's chin (3 RR 46). He also noticed she had a wound to her jaw (3 RR 28). McCann told Medrano that Reyes shot her (3 RR 29). When medical personnel arrived, McCann walked to the ambulance (3 RR 32). It was obvious to Medrano that McCann was pregnant (3 RR 34). Flowers told Medrano that Reyes was the father of McCann's unborn child (3 RR 51).

Comal County Deputy Sheriff Daniel Weaver responded to McCann's shooting (3 RR 56). He spoke with McCann in the ambulance and she told him

that she did not think Reyes had shot her on purpose (3 RR 59). While in the ambulance at the scene, McCann's chin was no longer bleeding and medical personnel were not providing services to her (3 RR 66).

Comal County Deputy Sheriff James Leal is in charge of the 911 communications center for the Sheriff's Office (3 RR 81). Leal identified the 911 call placed by Flowers after McCann was shot (3 RR 83). The recording was played for the jury (3 RR 86, 7 RR SX 1).

Shawna Flowers is McCann's younger sister (3 RR 88). Flowers has known Reyes for 15 years (3 RR 88). McCann dated and lived with Reyes for about a year before the shooting (3 RR 89).

On the day of shooting, Flowers was home inside her house (3 RR 90). She heard McCann and Reyes arguing on the front porch and then heard a loud pop followed by McCann saying "you shot me" and Reyes responding "no, I didn't" (3 RR 90). When Flowers went outside on the porch, she saw McCann with blood coming from a wound to McCann's chin (3 RR 90). Flowers called 911 for help (3 RR 90). McCann was about eight months pregnant at the time of the shooting (3 RR 91).

After Flowers had spoken with the authorities, she went to the hospital to see McCann (3 RR 99). Medical personnel were cleaning her wound and putting

4

stiches in her chin (3 RR 99).  McCann gave birth a week after the shooting (3 RR 102).  McCann had a medical procedure involving her chin a couple of months later (3 RR 101).

Dr. John Myers is a trauma surgeon at University Hospital in San Antonio (3 RR 123).  He treated McCann for the wounds to her chin and jaw (3 RR 125).  She received pain medication and antibiotics (3 RR 127).  The plastic surgery department washed and closed her wounds (3 RR 127).

Myers explained a bleeding and untreated wound, if bleeding enough, can pose a risk to life (3 RR 128).  An untreated wound can result in infection (3 RR 128).  An untreated gunshot wound to a pregnant woman could result in fetal demise or premature delivery (3 RR 129).  An infection resulting from a lack of treatment can cause the infection to travel through the mother's bloodstream and infect the fetus or uterus (3 RR 129).

Myers believed a projectile entered at McCann's jaw, followed her jawline, and exited out her chin (3 RR 130).  She suffered no nerve damage or facial fractures (3 RR 130, 136).  The projectile did not strike a vital organ, major blood vessel, or cause internal bleeding (3 RR 148).  The injuries carried no chance of immediate death (3 RR 149).  By the time he saw her in the hospital, her wounds

were not bleeding and she was able to speak (3 RR 141). She was discharged the following day (3 RR 141).

Myers stated that McCann's injuries caused no distress or injury to her baby (3 RR 141). Her delivery of the baby a week later was uneventful (3 RR 142).

Comal County Deputy Sheriff Rex Campbell investigated the shooting (3 RR 154). He spoke with McCann a week after the shooting (3 RR 154). She was in the hospital after having delivered her child on the previous day (3 RR 154). He recorded his conversation with McCann as well as a conversation he had with McCann's mother, Deidra McCann (3 RR 155, 157, 7 RR SX 28 and 29).

Campbell investigated the scene and could not find a bullet (3 RR 158). He found various posts by Reyes on McCann's Facebook page which included admissions by Reyes concerning the shooting (3 RR 159, 7 RR SX 26 and 27). One of the posts by Reyes said the shooting was accidental (3 RR 167).

Campbell obtained a warrant for Reyes' arrest (3 RR 172). After arresting Reyes at home, a search of his residence was conducted (3 RR 175). A search of the home revealed ammunition for a .38 caliber pistol, a .38 caliber revolver, three bongs, five used syringes, and a controlled substance in a purse (3 RR 178).

6

Campbell interrogated Reyes after his arrest (3 RR 187). A recording of the interrogation was admitted and played for the jury (3 RR 190, 7 RR SX 44). During the interrogation, Reyes variously admitted shooting at, near, or the direction of McCann, while all the while maintaining the shooting was an accident (3 RR 192).

McCann told Campbell she was shot with a .38 caliber Colt revolver (4 RR 6). Campbell never recovered a shell casing in relation to the shooting (4 RR 15).

On August 15, 2012, Campbell received metal fragments which were recovered from McCann's face (4 RR 18). The fragments were never tested (4 RR 34). Campbell did not know what type of metal was removed from McCann's face (4 RR 69).

A week after the shooting, Campbell saw scarring and disfigurement to McCann's chin after she delivered her child (4 RR 27). When he saw her a week before trial the wounds to her face had healed (4 RR 39).

Campbell saw McCann's newborn child the day after her birth and she was not injured or under distress (4 RR 38).

Campbell's investigation showed McCann was on the porch and Reyes on the ground at the time of the shooting (4 RR 47). He believes the bullet that struck

7

McCann first hit the door frame, then ricocheted, and then hit McCann (4 RR 49). He believed the shooting to have been reckless rather than intentional or knowing (4 RR 85).

Dr. Michael Berkus is a maternal fetal medical specialist from San Antonio (4 RR 54). On June 6, 2012, he saw McCann in the hospital after she was treated for her facial wounds in order to check on her unborn child (4 RR 55). The examination revealed that "everything was okay" with the fetus (4 RR 57). The fetus was at 36 or 37 weeks gestation at the time Berkus examined McCann (4 RR 61). Had there been any issues with the fetus as a result of McCann's injuries, Berkus would have delivered the child (4 RR 60).

Berkus agreed firing a gun and striking a pregnant woman could endanger the fetus a number of different ways (4 RR 59). First a wound to the mother might cause blood to flow to her injury and away from the uterus (4 RR 59). If there was a gunshot wound directly to the pregnancy itself, the placenta or uterus could be damaged and the fetus could be injured or killed (4 RR 59). Delivery at 37 weeks is termed "late premature" and could present respiratory problems, feeding problems, or bonding problems (4 RR 60). Finally, any injury to the mother could carry a risk of infection for the mother (4 RR 60).

Deidra McCann is McCann's mother (4 RR 100). Her daughter and Reyes lived together and had a child (4 RR 103). She went to the hospital after her daughter was injured and saw she had a hole in her chin and her jaw (4 RR 104). The scar on her daughter's face had healed by the time of trial (4 RR 108). After healing, the scar to her chin was about the size of a dime and the injury to her jaw was the size of the end of a marker (4 RR 109). After her McCann's baby was born, a procedure was performed to remove metal fragments from McCann's jaw (4 RR 112). Her daughter has no pain or discomfort from the injury and no trouble with her jaw following discharge from the hospital (4 RR 112, 121).

Raymond Nunley had difficulty testifying due to a recent snakebite (4 RR 129). After watching his interview by Campbell, Nunley was able to recall some events concerning the shooting (4 RR 132, 7 RR SX 45). He was with Reyes at the time McCann was shot (4 RR 134). Reyes had a .38 caliber pistol and Nunley saw a flash toward the ground (4 RR 135). Reyes was not aiming the pistol toward McCann when she was shot (4 RR 138).

Reyes stipulated to his previous 2006 state jail felony conviction for burglary of a building and one year sentence from Hidalgo County (4 RR 145, 7 RR SX 59). The defense rested and both sides closed (4 RR 148).

No objections were voiced to the court's charge (5 RR 29). The charge was read to the jury (5 RR 35). Argument was presented (5 RR 53, 74). The jury found Reyes guilty as charged in the indictment for all three counts (5 RR 90).

The punishment phase, before the same jury, commenced (5 RR 93). On June 15, 2011, New Braunfels Police Officer Chad Adams responded to a reported assault of Brittany Vaillant by Reyes at a motel (5 RR 96). Vaillant told Adams that Reyes had assaulted her (5 RR 99).

Vaillant testified she dated Reyes for three or four years (5 RR 104). She denied Reyes ever assaulted her or that she told the police he assaulted her (5 RR 106).

Comal County Deputy Sheriff Jason Cline is responsible for gang member identification in Comal County (5 RR 111). Cline stated that Reyes is a self-admitted member of the Valluco prison gang (5 RR 116). Cline described various tattoos on Reyes and their significance to gang membership (5 RR 118). Cline explained that prison gang members continue to commit acts of criminal violence even after they are released from prison (5 RR 120). The State rested on punishment (5 RR 126).

Shawna Flowers testified she did not know the location of her sister, McCann, or the reason she failed to comply with her subpoena to appear at trial (5

10

RR 128). She believes her sister's injury was accidental (5 RR 128). Reyes has never abused her sister and is good around Flowers' own children (5 RR 129).

Deidra McCann testified that Reyes had always been good to her daughter (5 RR 132). She believes the shooting and resulting injury was an accident (5 RR 133).

Elizabeth Gonzales was previously married to Reyes (5 RR 137). After they divorced, Reyes continued to see their two children and was current on his child support obligations (5 RR 138). During their 11 years together, Reyes was never violent toward Gonzales (5 RR 138).

Billie Jean McCann, the complainant, stated that she and Reyes had been together for two or three years and they have a child (6 RR 6). She is not afraid of Reyes and believes the shooting was accidental (6 RR 7). McCann did not come to court as directed in her subpoena because of threats she perceived from Reyes' mother (6 RR 18). The recordings of Campbell's interview of McCann in the hospital were played for the jury (6 RR 33, 7 RR SX 28 and 29). The defense rested on punishment (6 RR 49).

Comal County Deputy Sheriff Chris Koepp was called on rebuttal by the State (6 RR 50). He picked up McCann on a writ of attachment for not appearing in court as directed (6 RR 51). A recording of McCann while in his patrol car was

11

admitted into evidence and played for the jury (6 RR 58, 7 RR SX 62). On the recording, McCann was crying and said she was afraid to come to court because of Reyes' mother (6 RR 54). The State rested on rebuttal and both sides closed.

No objection was voiced to the trial court's punishment charge (6 RR 5). The charge was read to the jury (6 RR 62). Argument was presented (6 RR 68, 75). The jury returned punishment verdicts of 20 years for aggravated assault, 10 years for endangering a child, and 10 years for unlawful possession of a firearm (6 RR 86). The court directed the sentences be served concurrently and Reyes was sentenced in open court (6 RR 86).

## Summary of the Argument

Four points of error are presented on direct appeal. Two challenge the sufficiency of the evidence to support the convictions under the first and second counts of the indictment. The third point argues Reyes was not properly admonished on the deportation consequences of his guilty plea to the third count of the indictment. Finally, Reyes seeks reformation of the judgment for the second count because it erroneously states the degree of felony for which he was convicted. Reyes seeks for this Court to reverse the judgment of conviction under the first count and remand for a new punishment hearing, reverse the judgment of conviction under the second and reform to an acquittal, reverse the judgment of

12

conviction under the third count and remand for a new trial, reform the judgment under the second count of the indictment, or enter any other relief appropriate under the facts and the law.

The first count of the indictment alleges that while in a dating relationship with McCann, Reyes caused serious bodily injury to McCann by shooting her in the chin with a firearm. The offense is a felony of the first degree. By his first point of error, Reyes urges the evidence presented at trial is insufficient to prove McCann suffered serious bodily injury as that term is statutorily defined and judicially construed. After viewing the totality of the relevant evidence, this Court should conclude no rational trier of the facts could find McCann suffered serious bodily injury. The only definition of serious bodily injury arguably relevant is that of serious permanent disfigurement. However, simply that an injury causes scarring is not sufficient, on its own, to establish serious permanent disfigurement. A reviewing court must find more than mere scarring alone; instead, it must find in the record evidence of some significant cosmetic deformity in order to conclude that the evidence of serious bodily injury was sufficient. None is present in this cause. The only evidence of scarring is from McCann's mother indicating a scar the size of dime to her chin and the size of an end to a marker to her jaw. Reyes submits such evidence does not show "significant cosmetic deformity" sufficient to support a finding of serious bodily injury. He seeks a reformation of the judgment

13

to a felony of the second degree and a remand to the trial court for a new punishment hearing.

The second count of the indictment alleges Reyes committed the offence of endangering a child upon placing McCann's unborn child in imminent danger of death, bodily injury, or physical impairment by shooting a firearm at or in the direction of McCann who was pregnant with the child at the time (CR 12). The trial court's charge to the jury tracked the allegations of the indictment in instructing the jury under what circumstances to convict for the offense of endangering a child (2nd Supp. CR 12). By the second point of error, Reyes contends the evidence presented at trial, while showing a potential for imminent danger, is insufficient to show an imminent danger of death, bodily injury, or physical impairment to the unborn child. The evidence merely shows that Reyes placed the unborn child in a *potentially* dangerous situation by shooting a firearm at or in the direction of the child's mother. No rational factfinder could determine beyond a reasonable doubt, based on the evidence in the record, that Reyes placed the child in imminent danger. No evidence shows that physical pain or impairment was ready to take place.

While the evidence suggests that the situation *could* have turned for the worse and that the child *could* have been seriously injured, those potential

scenarios do not satisfy a showing of imminent danger required by the statute. No rational factfinder could have determined that Reyes placed the unborn child in imminent danger of death, bodily injury, or physical impairment. In view of the insufficient evidence to support the jury's verdict of imminent rather than potential danger, this Court should reverse the judgment of the trial court and render a judgment of acquittal.

Reyes entered a plea of guilty to the third count of the indictment alleging the offense of unlawful possession of a firearm (3 RR 13). In connection with that plea of guilty, the trial court failed to admonish Reyes of the deportation consequences of the plea. The record is silent as to Reyes' citizenship status and therefore it is impossible to determine with any certainty whether his decision to plead guilty would have changed had he been properly admonished as required. Accordingly, this Court cannot have a fair assurance that Reyes' decision to plead guilty would not have changed had he been admonished. The error is not harmless. When the trial court fails to admonish a defendant about the immigration consequences of his guilty plea, a silent record on citizenship, or a record that is insufficient to determine citizenship, establishes harm. This Court is compelled to sustain the third point of error and reverse the judgment of conviction for unlawful possession of a firearm.

By his final point of error, Reyes seeks reformation of the judgment relative to his conviction under the second count of the indictment. The second count of the indictment alleges Reyes committed the state jail felony offense of endangering a child (CR 11). The jury found him guilty of the second count as alleged in the indictment (CR 48, 5 RR 90). He was punished for a third degree felony due to the use or exhibition of a deadly weapon during the commission of the offense. The judgment erroneously recites he was convicted of a third degree felony (CR 59). The record contains the necessary data and information for modification of the judgment. This Court should modify the judgment to properly reflect the degree of felony for which Reyes was convicted in the second count was that of a state jail felony rather than a third degree felony offense.

**Point of Error One**

**The evidence is insufficient to prove the complainant sustained serious bodily injury in the aggravated assault conviction.**

The first count of the indictment alleges that while in a dating relationship with McCann, Reyes caused serious bodily injury to McCann by shooting her in the chin with a firearm. *See* TEX. PEN. CODE §§ 22.02(a) and 22.02(b)(1). The offense is a felony of the first degree. § 22.02(b)(1). By this point of error, Reyes urges the evidence presented at trial is insufficient to prove McCann suffered

16

serious bodily injury as that term is statutorily defined and judicially construed. He seeks a reformation of the judgment to a felony of the second degree and a remand to the trial court for a new punishment hearing.

When Deputy Medrano initially approached McCann, she had a towel pressed to her face (3 RR 46). McCann removed the towel and Medrano saw blood coming from a wound to McCann's chin (3 RR 46). He also noticed she had a wound to her jaw (3 RR 28). When medical personnel arrived, McCann walked to the ambulance (3 RR 32).

Deputy Weaver responded to McCann's shooting (3 RR 56). While in the ambulance at the scene, McCann's chin was no longer bleeding and medical personnel were not providing services to her (3 RR 66).

After Flowers had spoken with the authorities, she went to the hospital to see McCann (3 RR 99). Medical personnel were cleaning her wound and putting stiches in her chin (3 RR 99). McCann had a medical procedure involving her chin a couple of months later (3 RR 101).

Dr. John Myers treated McCann for the wounds to her chin and jaw (3 RR 125). She received pain medication and antibiotics (3 RR 127). The plastic surgery department washed and closed her wounds (3 RR 127).

Myers explained a bleeding and untreated wound, if bleeding enough, can potentially pose a risk to life (3 RR 128). An untreated wound can potentially result in infection (3 RR 128).

Myers believed a projectile entered at McCann's jaw, followed her jawline, and exited out her chin (3 RR 130). She suffered no nerve damage or facial fractures (3 RR 130, 136). The projectile did not strike a vital organ, major blood vessel, or cause internal bleeding (3 RR 148). The injuries carried no chance of immediate death (3 RR 149). By the time he saw her in the hospital, her wounds were not bleeding and she was able to speak (3 RR 141). She was discharged the following day (3 RR 141).

A week after the shooting, Deputy Campbell saw scarring and disfigurement to McCann's chin (4 RR 27). When he saw her again a week before trial the wounds to her face had healed (4 RR 39).

Deidra McCann is McCann's mother (4 RR 100). She went to the hospital after her daughter was injured and saw that her daughter had a hole in her chin and her jaw (4 RR 104). The scar on her daughter's face had healed by the time of trial (4 RR 108). After healing, the scar to her chin was about the size of a dime and the injury to her jaw was the size of the end of a marker (4 RR 109). After her daughter's baby was born, a procedure was performed to remove metal fragments

18

from her daughter's jaw (4 RR 112). Her daughter has no pain or discomfort from the injury and no trouble with her jaw following discharge from the hospital (4 RR 112, 121).

In a sufficiency of the evidence review, all of the evidence is viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State,* 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *see Brooks v. State,* 323 S.W.3d 893, 894–95, 899 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). Deference is given to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson,* 443 U.S. at 319). When the record of historical facts supports conflicting inferences, it will be presumed the trier of fact resolved any such conflicts in favor of the prosecution, and an appellate court will defer to that resolution. *Padilla v. State,* 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *See Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. § 22.01(a)(1). To establish the offense of aggravated assault, the State must prove the defendant caused serious bodily injury to another. § 22.02(a)(1). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PEN. CODE § 1.07(a)(8). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN. CODE § 1.07(a)(46). Thus, serious bodily injury is bodily injury plus one or more of the following effects: (1) a substantial risk of death, (2) death, (3) serious permanent disfigurement, (4) protracted loss of the function of any bodily member, (5) protracted impairment of the function of any bodily member, (6) protracted loss of the function of any bodily

20

organ, or (7) protracted impairment of the function of any bodily organ. *Moore v. State,* 739 S.W.2d 347, 355 (Tex. Crim. App. 1987) (Clinton, J., concurring).

Bodily injury cannot be elevated to "serious bodily injury" by postulating potential complications which are not in evidence. *See Moore,* 739 S.W.2d at 354. The state must present evidence that the victim suffered bodily injury. *Moore,* 739 S.W.2d at 352. In other words, the state must present relevant and probative evidence from which the trier of fact could infer beyond a reasonable doubt that the injury itself constituted serious bodily injury. *Moore,* 739 S.W.2d at 352; *Hernandez v. State*, 946 S.W.2d 108, 112 (Tex. App.—El Paso 1997, no pet.).

The record does not suggest that the injuries to McCann caused death, created a substantial risk of death, caused protracted loss of the function of any bodily member, caused protracted impairment of the function of any bodily member, caused protracted loss of the function of any bodily organ, or caused protracted impairment of the function of any bodily organ. Thus, it is appropriate to focus on the remaining aspect of the definition of "serious bodily injury," namely, serious permanent disfigurement.

The rule is well established that the relevant issue is the disfiguring effect of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment. *See Stuhler v. State,* 218

21

S.W.3d 706, 714 (Tex. Crim. App. 2007); *Fancher v. State,* 659 S.W.2d 836, 838 (Tex. Crim. App. 1983); *Brown v. State,* 605 S.W.2d 572, 575 (Tex. Crim. App. 1980). There are no wounds that constitute "serious bodily injury" per se. *Hernandez,* 946 S.W.2d at 111 (citing as examples *Webb v. State,* 801 S.W.2d 529, 533 (Tex. Crim. App. 1990), and *Moore,* 739 S.W.2d at 352. Instead, whether an injury constitutes a serious bodily injury must be determined on a case-by-case basis, evaluating each case on its own facts to determine whether the evidence was sufficient to permit the finder of fact to conclude that the injury fell within the definition of "serious bodily injury." *See Moore,* 739 S.W.2d at 352; *Banargent v. State*, 228 S.W.3d 393, 399 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

"Serious bodily injury" may be established without a physician's testimony when the injury and its effects are obvious. *See Carter v. State,* 678 S.W.2d 155, 157 (Tex. App.-Beaumont 1984, no pet.). The person who sustained the at-issue injury is qualified to express an opinion about the seriousness of that injury. *Hart v. State,* 581 S.W.2d 675, 677 (Tex. Crim. App. 1979); *Coshatt v. State,* 744 S.W.2d 633, 636 (Tex. App.-Dallas 1987, pet. ref'd).

Simply that an injury causes scarring is not sufficient, on its own, to establish serious permanent disfigurement. *Hernandez,* 946 S.W.2d at 113; *see McCoy v. State,* 932 S.W.2d 720, 724 (Tex. App.-Fort Worth 1996, pet. ref'd). A

reviewing court must find more than mere scarring alone; instead, it must find in the record evidence of "some significant cosmetic deformity" in order to conclude that the evidence of serious bodily injury was sufficient. *Compare Hernandez,* 946 S.W.2d at 113 (finding evidence of one-inch scar from stab wound in addition to a surgical scar insufficient to "elevate 'bodily injury' to 'serious bodily injury' "), *and McCoy,* 932 S.W.2d at 724 (concluding evidence of slight scar on lip, though permanent, was not sufficient to show serious permanent disfigurement), *with Moore v. State,* 802 S.W.2d 367, 369–70 (Tex. App.-Dallas 1990, pet. ref'd) (finding sufficient evidence of serious bodily injury where victim's cheekbone was fractured in three places and surgery needed to prevent significant cosmetic deformity), *and Pitts v. State,* 742 S.W.2d 420, 421–22 (Tex. App.-Dallas 1987, pet. ref'd) (concluding evidence of significant disfigurement was sufficient where victim suffered five facial fractures necessitating several surgeries to repair damage).

Likewise, the necessity of surgery alone is insufficient to establish serious bodily injury. *See Webb,* 801 S.W.2d at 533. Whether a "bodily injury" is "serious," in terms of the Texas Penal Code, does not depend solely upon whether the victim received medical treatment. *See Moore,* 739 S.W.2d at 354. However, in evaluating the evidence supporting serious bodily injury, courts do consider as a relevant factor whether the injury would be permanently disfiguring without

23

medical treatment. *See Brown,* 605 S.W.2d at 575 (concluding evidence that a broken nose would cause disfigurement and dysfunction if untreated sufficient to establish serious bodily injury). *See Sizemore v. State*, 387 S.W.3d 824, 827-29 (Tex. App.—Amarillo 2012, pet. ref'd).

After viewing the totality of the relevant evidence, this Court should conclude no rational trier of the facts could find McCann suffered serious bodily injury. The only definition of serious bodily injury arguably relevant is that of serious permanent disfigurement. However, as noted above, simply that an injury causes scarring is not sufficient, on its own, to establish serious permanent disfigurement. A reviewing court must find more than mere scarring alone; instead, it must find in the record evidence of some significant cosmetic deformity in order to conclude that the evidence of serious bodily injury was sufficient. None is present in this cause. The only evidence of scarring is from McCann's mother indicating a scar the size of dime to her chin and the size of an end to a marker to her jaw. Reyes submits such evidence does not show "significant cosmetic deformity" sufficient to support a finding of serious bodily injury.

Reyes does not dispute the nature of his relationship with McCann or the use of a deadly weapon. This Court has the authority to reform the judgment to the lesser offense of second degree aggravated assault. *See Thornton v. State*, 425

24

S.W.3d 289, 297 (Tex. Crim. App. 2014); *Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012). The judgment of conviction under the first count of the indictment should be reformed to a felony of the second degree and the cause remanded for a new punishment hearing on the first count of the indictment.

### Point of Error Two

**The evidence is insufficient to prove an imminent danger of death, bodily injury, or physical impairment of the unborn child in the endangering a child conviction.**

The second count of the indictment alleges Reyes committed the offence of endangering a child upon placing McCann's unborn child in imminent danger of death, bodily injury, or physical impairment by shooting a firearm at or in the direction of McCann who was pregnant with the child at the time (CR 12). The trial court's charge to the jury tracked the allegations of the indictment in instructing the jury under what circumstances to convict for the offense of endangering a child (2nd Supp. CR 12). By this point of error, Reyes contends the evidence presented at trial, while showing a potential for imminent danger, is insufficient to show an imminent danger of death, bodily injury, or physical impairment to the unborn child.

25

Comal County Deputy Sheriff Daniel Weaver responded to McCann's shooting (3 RR 56). He spoke with McCann in the ambulance and she told him that she did not think Reyes had shot her on purpose (3 RR 59). While in the ambulance at the scene, McCann's chin was no longer bleeding and medical personnel were not providing services to her (3 RR 66).

Dr. John Myers is a trauma surgeon at University Hospital in San Antonio (3 RR 123). He treated McCann for the wounds to her chin and jaw (3 RR 125). She received pain medication and antibiotics (3 RR 127). The plastic surgery department washed and closed her wounds (3 RR 127). Myers stated that McCann's injuries caused no distress or injury to her baby (3 RR 141). Her delivery of the baby a week later was uneventful (3 RR 142).

Comal County Deputy Sheriff Rex Campbell investigated the shooting (3 RR 154). He spoke with McCann a week after the shooting (3 RR 154). She was in the hospital after having delivered her child on the previous day (3 RR 154). Campbell saw McCann's newborn child the day after her birth and she was not injured or under distress (4 RR 38).

Dr. Michael Berkus is a maternal fetal medical specialist from San Antonio (4 RR 54). On June 6, 2012, he saw McCann in the hospital after she was treated for her facial wounds in order to check on her unborn child (4 RR 55). The

26

examination revealed that "everything was okay" with the fetus (4 RR 57). The fetus was at 36 or 37 weeks of gestation at the time Berkus examined McCann (4 RR 61). Had there been any issues with the fetus as a result of McCann's injuries, Berkus would have delivered the child (4 RR 60).

Berkus agreed firing a gun and striking a pregnant woman could endanger the fetus a number of different ways (4 RR 59). First a wound to the mother might cause blood to flow to her injury and away from the uterus (4 RR 59). If there was a gunshot wound directly to the pregnancy itself, the placenta or uterus could be damaged and the fetus could be injured or killed (4 RR 59). Delivery at 37 weeks is termed "late premature" and could present respiratory problems, feeding problems, or bonding problems (4 RR 60). Finally, any injury to the mother could carry a risk of infection for the mother which could be passed on to the fetus through the mother's bloodstream (4 RR 60).

In a sufficiency of the evidence review, all of the evidence is viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey,* 393 S.W.3d at 768; *see Brooks,* 323 S.W.3d at 894–95, 899 (citing *Jackson,* 443 U.S. at 319). Deference is given to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts. *Hooper,* 214 S.W.3d at 13 (quoting *Jackson,* 443 U.S. at 319). When the record of historical facts supports conflicting inferences, it will be presumed the trier of fact resolved any such conflicts in favor of the prosecution, and an appellate court will defer to that resolution. *Padilla,* 326 S.W.3d at 200. The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *See Lancon,* 253 S.W.3d at 707.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik,* 953 S.W.2d at 240. The hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Here, Reyes attacks the sufficiency of the evidence to prove that he endangered a child. He specifically contends the evidence is insufficient to show that he placed the child in "imminent" danger. The record reflects that the charge and the indictment tracked the language of the statute, except that they also included the manner and means in which the child was allegedly endangered—i.e.,

by shooting a firearm at or in the direction of Billie Jean McCann who was pregnant with the child at the time.

A person commits the offense of endangering a child when he "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." TEX. PEN. CODE § 22.041(c).

The word "imminent" is not defined in the Texas Penal Code, but generally means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex. App.–Austin 2002, pet. ref'd). It is not sufficient that a defendant "placed the child in a situation that is potentially dangerous[;]" rather, the defendant's conduct "must threaten the child with immediate, impending death, bodily injury, or impairment." *Id.* "[T]o be 'imminent' for [the purpose] of imposing responsibility pursuant to § 22.041(c), the situation must be immediate and actual, not potential or future, at the moment of the act or omission by the defendant." *Newsom v. B.B.,* 306 S.W.3d 910, 918 (Tex. App.–Beaumont 2010, pet. denied). "[T]he danger must be imminent at the moment the defendant engages in the conduct." *Id.*

The evidence merely shows that Reyes placed the unborn child in a *potentially* dangerous situation by shooting a firearm at or in the direction of the

29

child's mother. No rational factfinder could determine beyond a reasonable doubt, based on the evidence in the record, that Reyes placed the child in imminent danger. No evidence shows that physical pain or impairment was ready to take place. *See Millslagle,* 81 S.W.3d at 898. While the evidence suggests that the situation *could* have turned for the worse and that the child *could* have been seriously injured, those potential scenarios do not satisfy a showing of imminent danger required by the statute. No rational factfinder could have determined that Reyes placed the unborn child in imminent danger of death, bodily injury, or physical impairment. In view of the insufficient evidence to support the jury's verdict of imminent rather than potential danger, this Court should reverse the judgment of the trial court and render a judgment of acquittal.

## Point of Error Three

**The trial court failed to admonish Reyes on the deportation consequences of his plea of guilty to unlawful possession of a firearm (3 RR 13).**

Reyes entered a plea of guilty to the third count of the indictment alleging the offense of unlawful possession of a firearm (3 RR 13). In connection with that

30

plea of guilty, the trial court failed to admonish Reyes of the deportation consequences of the plea as required by TEX. CRIM. PROC. CODE art. 26.13(a)(4).[1]

A trial court must admonish the defendant of the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law. TEX. CRIM. PROC. CODE art. 26.13(a)(4). Here, it is undisputed that the trial court failed to admonish Reyes as to the deportation consequences of his guilty plea to the third count of the indictment. The trial court erred in failing to admonish Reyes about the deportation consequences of his plea. *See Hwang v. State,* 130 S.W.3d 496, 499 (Tex. App.-Dallas 2004, pet. ref'd).

A nonconstitutional violation of article 26.13 is subject to a harm analysis under TEX. R. APP. P. 44.2(b). *Aguirre–Mata v. State,* 125 S.W.3d 473, 473 (Tex. Crim. App. 2003). The essential question in determining harm is, "[C]onsidering the record as a whole, do we have a fair assurance that the defendant's decision to

---

[1] The trial court also failed to admonish Reyes of the punishment range attached to the offense. See TEX. CRIM. PROC. CODE art. 26.13(a)(1). That error is harmless because the prosecutor mentioned the punishment range in the voir dire examination of the prospective jurors (2 RR 50). *See Moore v. State,* 278 S.W.3d 444, 448 (Tex. App.-Houston [14th Dist.] 2009, no pet.) (holding failure to admonish on punishment range did not affect defendant's substantial rights when defendant was present when punishment range was explained during voir dire).

plead guilty would not have changed had the court admonished him?" *Anderson v. State,* 182 S.W.3d 914, 919 (Tex. Crim. App. 2006). Three issues should be considered in the "fair assurance" analysis: (1) whether the defendant knew the consequences of his plea, (2) the strength of the evidence of guilt, and (3) the defendant's citizenship. *Vannortrick v. State,* 227 S.W.3d 706, 712 (Tex. Crim. App. 2007); *Kelley v. State*, 237 S.W.3d 906, 908 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

On the first issue, the record is silent on the immigration consequences of Reyes' guilty plea. When the record is silent regarding the consequences of conviction in the context of a guilty plea, the court must infer that the defendant did not know the consequences of his plea. *Vannortrick,* 227 S.W.3d at 710–11. A court cannot infer from a silent record that the defendant was aware of the consequences of his plea. *Id.* On the second issue, the strength or weakness of the evidence of guilt has little relevance when coupled with a finding that the defendant was not aware of the consequences of his plea. *Id.* at 713; *Kelley*, 237 S.W.3d at 908.

The record is silent as to Reyes' citizenship status and therefore it is impossible to determine with any certainty whether his decision to plead guilty would have changed had he been properly admonished as required. Accordingly,

this Court cannot have a fair assurance that Reyes' decision to plead guilty would not have changed had he been admonished. The error is not harmless. When the trial court fails to admonish a defendant about the immigration consequences of his guilty plea, a silent record on citizenship, or a record that is insufficient to determine citizenship, establishes harm by the standard of Rule 44.2(b). *Vannortrick,* 227 S.W.3d at 714; *Kelley v. State*, 237 S.W.3d at 909. This Court is compelled to sustain the issue and reverse the judgment of conviction for unlawful possession of a firearm.

### Point of Error Four

**The judgment for court count two should be reformed to reflect Reyes was convicted of the state jail felony offense of endangering a child (CR 60).**

The second count of the indictment alleges Reyes committed the state jail felony offense of endangering a child (CR 11). *See* TEX. PEN. CODE §§ 22.041(c) and 22.041(f). The jury found him guilty of the second count as alleged in the indictment (CR 48, 5 RR 90). He was punished for a third degree felony due to the use or exhibition of a deadly weapon during the commission of the offense. *See* TEX. PEN. CODE § 12.35(c)(1). The judgment erroneously recites he was convicted of a third degree felony (CR 59).

33

Both *Campbell v. State*, 49 S.W.3d 874 (Tex. Crim. App. 2001) and *State v. Webb*, 12 S.W.3d 808 (Tex. Crim. App. 2000) acknowledge state jail felony offenses are classified as either "aggravated" or "unaggravated/non-aggravated". *See Campbell*, 49 S.W.3d at 877; *Webb*, 12 S.W.3d at 811. Whether or not a state jail felony offense is aggravated or unaggravated depends upon whether the offense is punishable under § 12.35(a), reserved for unaggravated state jail offenses, or punishable under § 12.35(c), reserved for aggravated state jail offenses. *See Webb*, 12 S.W.3d at 811.

As explained in *Ford v. State*, 334 S.W.3d 230 (Tex. Crim. App. 2011), while the punishment range for an offense may be enhanced, the enhancement has no bearing on the character of the underlying offense. *Ford*, 334 S.W.3d at 234. When applicable, § 12.35(c) increases the punishment level for a § 12.35(a) state jail felony to a third-degree felony, but the primary offense itself remains a state jail felony. *Id.*

Even if a defendant is not being harmed by a deficiency in a judgment, he nevertheless has an interest in having the judgment correctly reflect the findings of the trial court and the jury. *Howell v. State*, 563 S.W.2d 933, 936 (Tex. Crim. App. 1978). A judgment should properly recite the degree of the offense for which the defendant was convicted. TEX. CRIM. PROC. CODE art. 42.01 § 14.

34

The general rule is that if an appellate court has the necessary data and evidence before it, the judgment may be modified or reformed on appeal. *Splawn v. State*, 160 S.W.3d 103, 107 (Tex. App. - Texarkana 2005, pet. ref'd). This Court has the authority to modify the judgment of a trial court. TEX. R. APP. P. 43.2(b). The authority to modify a judgment includes reformation of a judgment which fails to correctly reflect the degree of the offense for which the defendant was convicted. *Land v. State*, 291 S.W.3d 23, 31 (Tex. App. – Texarkana 2009, pet. ref'd); *Jackson v. State*, 288 S.W.3d 60, 64 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd).

The record contains the necessary data and information for modification of the judgment. This Court should modify the judgment to properly reflect the degree of felony for which Reyes was convicted in the second count was that of a state jail felony rather than a third degree felony offense.

### Prayer

Reyes prays this Court will reverse the judgment of conviction under the first count and remand for a new punishment hearing, reverse the judgment of conviction under the second and reform to an acquittal, reverse the judgment of conviction under the third count and remand for a new trial, reform the judgment

under the second count of the indictment, or enter any other relief appropriate

under the facts and the law.

<div style="margin-left:50%">

Respectfully submitted,

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

1411 West Avenue
Suite 100
Austin, TX 78701

(512) 469-7943
(512) 474-5594 – facsimile
wetzel_law@1411west.com

Attorney for Appellant
Isreal Reyes, Sr.

</div>

## Certificate of Compliance

This pleading complies with TEX. R. APP. P. 9.4.  According to the word count function of the computer program used to prepare the document, the brief contains 7,789 words excluding the items not to be included within the word count limit.

<div style="margin-left:50%">

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

</div>

## Certificate of Service

I, Richard E. Wetzel, counsel for appellant, do hereby certify that a true and correct copy of the foregoing document was emailed to counsel for the State, Josh Presley, Assistant Criminal District Attorney, at his email address, preslj@co.comal.tx.us on this the 5th day of October, 2015.

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300